1
2
3
4
5
6
7

Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Michael L. Vander Giessen
Special Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

8
9

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

10
11

UNITED STATES OF AMERICA,

No. 2:20-cr-00064-TOR

12
13

Plaintiff,

v.

UNITED STATES' SENTENCING
MEMORANDUM AND MOTION
FOR DOWNWARD VARIANCE

14
15
16

DAVIS HENDERSON TATSHAMA,
SR.,

17

Defendant.

18
19
20
21
22
23
24
25
26
27
28

     The Plaintiff, the United States of America, by and through the Acting United States Attorney for the Eastern District of Washington, Joseph H. Harrington, and Special Assistant United States Attorney Michael L. Vander Giessen and Assistant United States Attorney Richard R. Barker, respectfully submits the following sentencing memorandum and motion for a downward variance. For the reasons stated below, and consistent with the parties' Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, the United States respectfully asks the Court to sentence the Defendant, Davis Henderson Tatshama Sr., to twenty-seven months' imprisonment followed by three years' supervised release.

# I.    INTRODUCTION

The parties agreed under Rule 11(c)(1)(C) to recommend a sentencing range of twenty to twenty-seven months' imprisonment followed by three years' supervised release. The United States submits that only the high end of this range adequately captures the nature and severity of Mr. Tatshama's offense conduct, as well as his criminal history and acceptance of responsibility. Therefore, the United States recommends the Court accept the parties' Rule 11(c)(1)(C) plea agreement and sentence Mr. Tatshama to twenty-seven months' imprisonment followed by three years' supervised release. This proposed sentence is sufficient but not greater than necessary to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a).

# II.    STATEMENT OF FACTS

This case arose on January 16, 2020 when, over the course of approximately eleven hours, Mr. Tatshama sent a series of Facebook messages to J.R.A., his former intimate partner and the mother of his children. ECF No. 72 at 4–5; ECF No. 79 ¶¶ 15–17. In those messages, Mr. Tatshama threatened to kill and otherwise harm J.R.A. ECF No. 72 at 4–5; ECF No. 79 ¶ 15. Mr. Tatshama's Facebook messages to J.R.A. reflect his intent to harass and intimidate her. ECF No. 72 at 4.

At the time Mr. Tatshama threatened J.R.A., he was the defendant and she was the victim in two pending Colville Tribal Court cases charging him with three crimes, namely a March 2017 domestic violence strangulation and battery, and a September 2019 domestic violence battery. *Id.*; ECF No. 79 ¶ 14. Mr. Tatshama ultimately pleaded guilty to those tribal charges on May 28, 2020. ECF No. 72 at 4; ECF No. 79 ¶¶ 90–93. But at the time he threatened J.R.A., Mr. Tatshama had two outstanding bench warrants for his arrest because he failed to appear for tribal court hearings. ECF No. 79 ¶ 14.

The facts set forth in the Plea Agreement, ECF No. 72 at 3–5, and the Presentence Investigation Report, ECF No. 79 ¶¶ 14–17, reveal that Mr. Tatshama

sent the threats to J.R.A. so as to dissuade her from cooperating in the tribal prosecution against him. After receiving the threats, J.R.A. feared for her safety. ECF No. 72 at 5; ECF No. 79 ¶ 17. J.R.A.'s fear was based, at least in part, on Mr. Tatshama's history of assaulting her. ECF No. 72 at 5; ECF No. 79 ¶ 17. Mr. Tatshama's threats themselves allude to that assaultive history and J.R.A.'s cooperation in the tribal prosecution against him: "Yeah let's do it again. Think I give a fuck about jail"; "Pretty dumb risk to take sure hope it was worth it." ECF No. 79 ¶ 15.

J.R.A.'s cooperation in tribal efforts to prosecute Mr. Tatshama for his March 2017 domestic violence strangulation and battery, and for his September 2019 domestic violence battery, is at least one of the reasons Mr. Tatshama threatened J.R.A. As he later admitted in a Facebook message to a third party, Mr. Tatshama decided to "threaten [J.R.A.] so she wouldn't come back." *Id.* ¶ 16a. When asked how he threatened J.R.A., Mr. Tatshama replied, "Kick her ass if she came back." *Id.*; *see also* ECF No. 72 at 5. Mr. Tatshama elaborated that J.R.A. had turned him in and, consequently, he had two open domestic violence cases while federal authorities were investigating him for domestic violence strangulation. ECF No. 79 ¶ 16a. Mr. Tatshama lamented that he had bench warrants for his arrest and may be going to prison. *Id.*

### III.    SENTENCING CALCULATIONS

Based on a total offense level of 17, a criminal history score of 9, and a criminal history category of IV, the government agrees with the United States Probation Office that the advisory guideline range applicable to Mr. Tatshama's case is thirty-seven to forty-six months' imprisonment. ECF No. 79 ¶¶ 35, 89, 142.

Considering these calculations, the government stands by the plea agreement pursuant to Rule 11(c)(1)(C).

//

## IV.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a) AND MOTION FOR DOWNWARD VARIANCE

In determining the appropriate sentence, the Court should consider the factors set forth in 18 U.S.C. § 3553(a).

### A.    The nature and circumstances of the offense and the history and characteristics of the defendant

The nature and circumstances of the offense, contained in the factual statement above, are concerning. The offense involved Mr. Tatshama's threats against the life and personal safety of J.R.A., his former intimate partner and the mother of his children. He had committed acts of domestic violence against her before. And he had three pending tribal charges arising from those acts. Against this backdrop, he threatened her to such a degree as to instill fear in her. And in the process, he unlawfully interfered with the administration of justice by harassing and intimidating her for cooperating in tribal efforts to prosecute him.

Mr. Tatshama is a repeat domestic violence perpetrator, having May 2020 tribal court convictions for strangling and battering J.R.A. in March 2017, and battering her again in September 2019. However, these convictions do not count in his criminal history score. ECF No. 79 ¶¶ 90, 92. While Mr. Tatshama has nine criminal history points, none of his countable criminal convictions involve domestic violence or threats sent by electronic means. Most of his countable criminal convictions are driving offenses.[1] The only exception is his 2014 Okanogan County Superior Court conviction for third degree assault of a law

---

[1] For two convictions of first degree driving while license suspended alone, Mr. Tatshama received a combined four criminal points because Washington state law imposes mandatory minimum sentences of ninety days' imprisonment for a second conviction of this crime and 180 days' imprisonment for a third or subsequent conviction of this crime. *See* Wash. Rev. Code § 46.20.342(1)(a).

enforcement officer.

A sentence of twenty-seven months' imprisonment best reflects the nature and circumstances of this crime as well as Mr. Tatshama' history and characteristics.

**B.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

The offense is serious, as it involved a repeat domestic violence perpetrator's threats against the life and personal safety of his victim—his former intimate partner and the mother of his children. The offense reveals blatant disregard for the rule of law, as it involved a criminal defendant's unlawful interference with the administration of justice in pending criminal cases by harassing and intimidating his victim for cooperating in efforts to prosecute him.

Thus, there is a great need for the sentence in Mr. Tatshama's case to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. A sentence of twenty-seven months' imprisonment is sufficient but not greater than necessary to accomplish this purpose.

**C.    The need for the sentence imposed to afford adequate deterrence to criminal conduct**

Mr. Tatshama and J.R.A. are both enrolled tribal members. Domestic violence is a problem on the Colville Indian Reservation, as it is throughout Indian country. *See* Tribal Law and Order Act of 2010, Pub. L. No. 111-211, tit. II, § 203(a)(5), 124 Stat. 2258, 2263 (codified at 25 U.S.C. § 2801 note) (finding "epidemic proportions"). Experience has demonstrated it can be difficult for Native American victims of domestic violence like J.R.A. to obtain justice in tribal court. One significant factor is when domestic violence perpetrators like Mr. Tatshama unlawfully interfere with the administration of justice by harassing and intimidating their victims to dissuade them from cooperating in tribal prosecutions.

Thus, there is a great need for the sentence imposed in Mr. Tatshama's case to adequately deter both him and other domestic violence perpetrators from engaging in this unacceptable conduct. A sentence of twenty-seven months' imprisonment is sufficient to achieve this objective. A lower sentence would be insufficient. But a higher sentence would be greater than necessary.

**D.    The need for the sentence imposed to protect the public from further crimes of the defendant**

As the United States argued previously, *see* ECF No. 76, this crime involves conduct evidencing Mr. Tatshama's intent to carry out his threats against J.R.A. His motive in threatening her was to dissuade her from cooperating with the tribal prosecution against him. After receiving his threats, she feared for her safety. Her fear was based, at least in part, on his history of assaulting her.

But Mr. Tatshama ultimately did not achieve his objective in threatening J.R.A. After he threatened her, he pleaded guilty in tribal court to strangling and battering her in March 2017, and battering her again in September 2019. He then pleaded guilty in this Court to one count of Threats in Interstate Commerce. He has a prior state court conviction for third degree assault of a law enforcement officer.

Considering all, there is a great need for the sentence imposed in Mr. Tatshama's case to protect J.R.A., and the public at large, from his further crimes. A sentence of twenty-seven months' imprisonment, combined with a no-contact order, is sufficient but not greater than necessary to accomplish this purpose.

**E.    The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. Tatshama has not completed high school or equivalent education. ECF No. 79 ¶ 114. He was unemployed for over three years before committing this crime. *Id.* ¶¶ 115–16. In 2007, around age twenty-three, he completed both inpatient and outpatient substance abuse treatment. *Id.* ¶ 113. But he has not

received any substance abuse treatment since, despite continuing to use alcohol and drugs up until his arrest in March 2020. *Id.* ¶¶ 109–13. Although "he does not feel a need to participate in drug or alcohol related treatment services upon his release from custody," *id.* ¶ 113, a substance abuse evaluation and treatment requirement is reasonably necessary for both Mr. Tatshama's rehabilitation and J.R.A.'s protection, *see* ECF No. 76 at 6–7. Additionally, Mr. Tatshama would likely benefit from other services available to him in the Federal Bureau of Prisons.

**F.    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

The best way to ensure consistent sentences for similarly-situated defendants across courtrooms, districts, and the country is for courts to apply the Guidelines in the same manner everywhere. *See United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). But diminishing sentencing disparities "depends . . . upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction." *United States v. Booker*, 543 U.S. 220, 250 (2005). "That determination is particularly important in the federal system where [some] crimes . . . can encompass a vast range of very different kinds of underlying conduct." *Id.* at 250–51.

A one-size-fits-all approach would be inappropriate here. For reasons discussed more fully below, Mr. Tatshama is not a typical cybercriminal and, for this crime, J.R.A. does not support the advisory guideline range of thirty-seven to forty-six months' imprisonment.

**G.    The need to provide restitution to any victims of the offense**

To date, J.R.A. has not requested restitution in connection with Mr. Tatshama's case.

//

**H.    Basis for downward variance**

After "consider[ing] the applicable factors in 18 U.S.C. § 3553(a) taken as a whole," U.S.S.G. § 1B1.1(c), the Court may vary from the advisory guideline range and "impose[] a sentence that is outside the guidelines framework," *id.* § 1B1.1 cmt.

A sentence of twenty-seven months' imprisonment better reflects J.R.A.'s desired outcome for Mr. Tatshama's case, which is for him to serve a reasonable term of incarceration while preserving his ability to have a meaningful relationship with their children in common, and for her to move on with her life without the onus of testifying. J.R.A. specifically endorsed the sentencing range that the parties agreed to under Rule 11(c)(1)(C).

Additionally, few of Mr. Tatshama's countable criminal convictions are relevant to sentencing on one count of Threats in Interstate Commerce. The effect is that his criminal history category overstates his sentencing posture with respect to this crime.

Further, the evidence suggests that, in sending the threats to J.R.A., Mr. Tatshama acted in desperation with little planning or contemplation. It is reasonable to infer he was afraid of the criminal exposure he faced for his prior acts of domestic violence against J.R.A. Mr. Tatshama planned to proceed to trial in both of his tribal cases. Then, for whatever reason, he failed to appear for tribal court hearings, triggering two bench warrants for his arrest. Realizing the situation was spiraling out of control and perhaps not knowing how to rectify it, Mr. Tatshama threatened J.R.A. to dissuade her from cooperating with the tribal prosecution against him.

This does not mean Mr. Tatshama sent J.R.A. mere empty threats, however. On the contrary, he has admitted the element that "the communication was transmitted for purpose of issuing a threat, or with knowledge that the

communication would be viewed as a threat." ECF No. 72 at 3. Mr. Tatshama's threats against J.R.A., and his conduct evidencing his intent to carry them out, are worrisome. But it is palpable that, in sending the threats to J.R.A., Mr. Tatshama did not fully envisage his behavior and, rather, acted in desperation. This somewhat mitigating circumstance, combined with Mr. Tatshama's acceptance of responsibility both for threatening J.R.A., and for his prior acts of domestic violence against her, may be significant.

Together, these factors justify a downward variance to a sentence of twenty-seven months' imprisonment.

## V.    SENTENCING RECOMMENDATION

The United States recommends the Court accept the parties' Rule 11(c)(1)(C) plea agreement and sentence Mr. Tatshama to twenty-seven months' imprisonment followed by three years' supervised release. Such a sentence adequately captures the nature and severity of Mr. Tatshama's offense conduct, as well as his criminal history and acceptance of responsibility.

DATED this 3rd day of March 2021.

Respectfully submitted,

Joseph H. Harrington
Acting United States Attorney

*s/ Michael L. Vander Giessen*
Michael L. Vander Giessen
Special Assistant United States Attorney

*s/ Richard R. Barker*
Richard R. Barker
Assistant United States Attorney

1
2
3
4

     I hereby certify that on March 3, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following: John Stephen Roberts, Jr. and J. Houston Goddard of the Federal Defenders of Eastern Washington and Idaho.

5
6
7

*s/ Michael L. Vander Giessen*
Michael L. Vander Giessen
Special Assistant United States Attorney

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28